# EXHIBIT A

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

| | | |
|---|---|---|
| WAYNE COHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| JAMES HARTANOVICH, JOYCE | ) | **04 CH 1365** |
| HARTANOVICH, WILLIAM MARR, | ) | |
| WILLIAM STANCATO, | ) | |
| and UNKNOWN OWNERS and | ) | |
| NON-RECORD CLAIMAINTS, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR
## FORECLOSURE OF MORTGAGE AND OTHER RELIEF

Plaintiff, Wayne Cohen, by his attorneys, Arnstein & Lehr LLP, and complaining of

Defendants, JAMES HARTANOVICH, JOYCE HARTANOVICH, WILLIAM MARR,

WILLIAM STANCATO, and UNKNOWN OWNERS AND NON-RECORD CLAIMANTS,

pursuant to 735 ILCS 5/15-1101, states as follows:

## COUNT I – MORTGAGE FORECLOSURE
**(Against James Hartanovich, Joyce Hartanovich, William Marr and William Stancato)**

1.     Plaintiff files this complaint to foreclose the mortgage, trust deed or other

conveyance in the nature of a mortgage (hereinafter called "mortgage") hereinafter described and

joins defendants James Hartanovich, and Joyce Hartanovich, as parties hereto.

2.     Attached as Exhibit "A" is a true copy of the Mortgage.  Attached as Exhibit "B"

a true copy of the Note secured thereby.

3.     Information concerning mortgage:

     a.     Nature of instrument: mortgage

     b.     Date of mortgage: March 21, 2003

c.     Name of Mortgagor: James Hartanovich

d.     Name of Mortgagee: The mortgagee is Wayne Cohen

e.     Date and place of recording or registering: April 28, 2003 with the

Recorder of Deeds of Will County, Illinois

f.     Identification of Recording: Document No. R 2003096175

g.     Interest subject to mortgage: Fee Simple

h.     Amount of original indebtedness, including subsequent advances made

under the mortgage (1) original indebtedness: $36,000.00; (2) advances: -0-

i.     Legal Description of Mortgaged Real Estate and the Common Address or

Other Information Sufficient to Identify with Reasonable Certainty:

Tax Parcel Number: 09-12-305-012-0000

LOT 12, IN BLOCK 44 IN FRANKFORT SQUARE UNIT NO. 16, BEING A
SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 12 AND PART OF
THE NORTHWEST 1/4 OF SECTION 13, TOWNSHIP 35 NORTH, RANGE 12
EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH AND
SOUTH OF THE INDIAN BOUNDARY LINE, ACCORDING TO THE PLAT
THEREOF RECORDED OCTOBER 25, 1978 AS DOCUMENT NO. R78-
42509, IN WILL COUNTY, ILLINOIS.

Commonly known as: 7715 W. Frankfort Square, Frankfort, Illinois 60423 (the
"Property").

j.     Statement as to defaults:

1.     Mortgagors have not paid the monthly installments of principal,

taxes, interest and insurance for July 2003, through the present;

and

2.     Principal balance due on the Note and the Mortgage is $36,000

plus interest, costs, advances and attorneys' fees. Interest due

through July 7, 2004 is $57,600.00.  Late charges due as of July

21, 2003 through the present are $5,040.00.

k.      Name of present owner(s) of said premises: Joyce Hartanovich

l.      Name of other persons who are joined as defendants and whose interest in

or lien on the mortgaged real estate is sought to be terminated:

(1)     Joyce Hartanovich, the current title owner of the property by virtue

of a warranty deed granted to her by James Hartanovich on March

31, 2004.

(2)     Unknown owners.

(3)     Non-record claimants.

m.      Name of defendants claimed to be personally liable for a deficiency, if

any: James Hartanovich.

n.      Capacity in which Plaintiff brings this foreclosure.  Plaintiff is the original

owner and legal holder of the Note and the indebtedness secured by the

Mortgage.  See Exhibits A and B.

o.      Facts in support of redemption shorter than the longer of (i) 7 months from

the date of the mortgagor or, if more than one, all the mortgagors (I) have

been served with summons or by publication or (II) have otherwise

submitted to the jurisdiction of the court, or (ii) 3 months from the entry of

the judgment of foreclosure, if sought: unless otherwise alleged, Plaintiff

will pray for a shortened redemption period after the filing of the instant

foreclosure action by a separate petition if a shortened redemption period is sought.

p.  Statement that the right of redemption has been waived by all owners of redemption, if applicable: There has been no executed waiver of redemption by all owners of redemption, however, Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

q.  Facts in support of a request for attorneys' fees. The subject mortgage and note provides for payment of attorneys' fees, court costs, and expenses in the event of a default by the mortgagor.

r.  Facts in support of a request for appointment of a receiver: Unless otherwise alleged, Plaintiff will pray for this relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

s.  Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made. However, Plaintiff alleges that it is not precluded from making or accepting such an offer by the filing of the instant foreclosure action.

t.  Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: James Hartanovich and Joyce Hartanovich.

4.    Plaintiff alleges that in addition to persons designated by name herein and the unknown defendants herein before referred to, there are other persons, and/or non-record claimants who may have an interest in this action and who may have or may claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following: Unknown owners and non-record claimants, if any. The name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made parties defendant to this action by the name and description of unknown owners and non-record claimants.

WHEREFORE Plaintiff prays for the following relief:

a.    A judgment of foreclosure of the mortgage as to James Hartanovich;

b.    An order granting a shortened redemption period, if authorized by law such as if the mortgaged real estate is found to be abandoned;

c.    A personal judgment for a deficiency, if authorized by law;

d.    An order granting plaintiff his attorneys' fees, costs, interest, and all late charges due;

e.    An order placing the mortgagee in possession and appointing a receiver; and

f.    Such other relief as equity may require.

## COUNT II – BREACH OF NOTE
### (Against James Hartanovich, William Marr, and William Stancato)

5.    On March 21, 2003, plaintiff entered into three notes with defendants James Hartanovich, William Marr, and William Stancato, for the purpose of lending James Hartanovich, William Marr, and William Stancato $36,000.00 for which they would be jointly

and severally liable. Copies of the notes are attached hereto as Exhibit B. The terms and language of each note are identical.

6. The notes provided that plaintiff would lend defendants Hartanovich, Marr and Stancato $36,000.00 under the following terms: the money would be lent at a rate of 10% interest per month, with the sum of all principal and interest to be paid in a lump sum of $50,400.00 on July 21, 2003. *See* Exhibit B, ¶ 2 of the notes.

7. The Note also provided that if defendants Hartanovich, Marr and Stancato were more than fifteen (15) days late with the lump sum payment, then defendants Hartanovich, Marr and Stancato would be required to pay one or more late payment fee(s) of $5,040.00, equaling 10% of the overdue principal and interest. *See* Exhibit B, ¶ 6 of the notes.

8. The note also provides that defendants are required to pay plaintiff's attorneys' fees in the event that defendants default under their notes. *See* Exhibit B, ¶ 6 of the notes.

9. Plaintiff has performed all of his duties and obligations under the note, including lending defendants Hartanovich, Marr and Stancato $36,000.00.

10. Defendants Hartanovich, Marr and Stancato have breached the notes by failing to re-pay plaintiff any of the outstanding principal, interest, or late fees.

11. Plaintiff has been damaged in the amount of $98,640 consisting of outstanding principal, interest, and late fees under the note.

WHEREFORE, plaintiff Wayne Cohen requests judgment in his favor and against defendants, James Hartanovich, William Marr and William Stancato, for $36,000.00 in past due principal, plus past due interest totaling $57,600, plus one or more late charges totaling

$5,040.00, plus plaintiff's attorneys fees, costs, accruing interest pursuant to the notes and for any other relief deemed necessary and just by this Court.

DATED: July 7, 2004

WAYNE COHEN

By: _____

One of his attorneys

Steven N. Malitz
ARDC # 6229768
Daniel I. Schlade
ARDC # 6273008
Arnstein & Lehr LLP
120 South Riverside Plaza
Suite 1200
Chicago, Illinois 60606-3913
(312) 876-7100

902806v1

# VERIFICATION

I, Wayne Cohen, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify that the statements set forth in the foregoing Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.


_____
Wayne Cohen

MARY ANN STUKEL                                    7P
Will County Recorder
Will County
R 2003096175                          Page 1 of 7
KLH Date 04/28/2003      Time 14:06:26
Recording Fees:                        21.00

_____ [The Above Space for Recorder's Use Only]_____

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **March 21, 2003**. The mortgagor is **JAMES HARTANOVICH**, individually, ("Borrower")

This Security Instrument is give to **WAYNE COHEN** whose address is
**428 South Clark Street, Chicago, Illinois** ("Lender").

Borrower owes Lender the principal sum of **Thirty-Six Thousand and 00/100** Dollars (U.S. **$36,000.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **July 21, 2003.** This Security instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grand and convey to Lender the following described property located in **COOK** County, Illinois:

**LOT 12, IN BLOCK 44 IN FRANKFORT SQUARE UNIT NO. 16, BEING A SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 12 AND PART OF THE NORTHWEST 1/4 OF SECTION 13, TOWNSHIP 35 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH AND SOUTH OF THE INDIAN BOUNDARY LINE, ACCORDING TO THE PLAT THEREOF RECORDED OCTOBER 25, 1978 AS DOCUMENT NO. R78-42509, IN WILL COUNTY, ILLINOIS.**

**PIN:   09-12-305-012-0000**

which has the address of 7715 W. Frankfort Square, Frankfort, Illinois, 60423 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions



shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subjects to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the funds to pay the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Agreement.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, Borrower shall pay to Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied; first, to prepayment charges due under the Note; second, to amounts payable under paragraph 2, third, to interest due; fourth, to principal due; and last, to late charges due under the Note.

2

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which is the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, wether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with provision of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees, and entering on the Property to make repair. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The process of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceed multiplied by the following fraction: (a) the total amount of the sum secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if after notice by Lender to Borrower that the condemner offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 and 2 or change the amount of such payments.

4